PLATEAU, INC., Appellee,

v.

DEPARTMENT OF the INTERIOR and
Cecil D. Andrus, et al., Appellants.

No. 78–1415.

United States Court of Appeals,
Tenth Circuit.

Decided Aug. 17, 1979.

Argued Jan. 24, 1979.

Anne S. Almy, Dept. of Justice, Washington, D. C. (with James W. Moorman, Asst. Atty. Gen., Washington, D. C., Victor R. Ortega, U. S. Atty., James B. Grant, Asst. U. S. Atty., Albuquerque, N. M., Edward J. Shawaker and Lawrence R. Liebesman, Dept. of Justice, Washington, D. C., on the brief), for appellants.

Edwin Jason Dryer, Washington, D. C. (with Mark K. Adams of Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., on the brief), for appellee.

Before McWILLIAMS, DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

The contest for available oil resources comes into focus in this dispute over the Secretary of Interior's scheme for distributing Federal royalty oil.[1] Regulations promulgated by the Secretary provide that royalty oil will be sold only to refiners without adequate supplies of crude oil who are "small business enterprises" as defined by the Small Business Administration. 30 C.F.R. § 225.2 (1978). The applicable definition refers to refineries whose capacities do not exceed 45,000 barrels per day, and whose total number of employees, and those of their affiliates, is not greater than 1,500. 13 C.F.R. § 121.3–9(a)(1) (1979).

The plaintiff, Plateau, Inc., is not a small business enterprise as defined by the Small Business Administration. Its application for royalty oil was rejected because it is a wholly owned subsidiary of Suburban Propane Gas Corporation, which employs more than 3,500 persons and has annual sales of approximately 250 million dollars. The par-

---

1. Royalty oil is received as in-kind payment for royalties from oil and gas leases on federal lands.

ent company is primarily engaged in the retail sale of liquified petroleum gas. Plateau brought the instant suit attacking the validity of the Secretary's definitional regulations.

■ In ruling on cross-motions for summary judgment, the trial court held that by limiting sales of royalty oil to "small business enterprises," the Secretary of Interior had exceeded his legislative authority. The trial court remanded Plateau's application to purchase royalty oil to the Department of Interior for reconsideration and enjoined, pending administrative review, disposition of royalty oil "in any manner which would prevent the defendants from awarding to plaintiff the quantity of Federal royalty oil to which plaintiff may be found to be eligible." Record, vol. 1, at 144.[2]

Our review, like that of the trial court, turns on the proper interpretation of the "O'Mahoney Amendment"[3] to the Mineral Lands Leasing Act of 1920.[4] The O'Mahoney Amendment provides:

### AN ACT

To encourage and protect oil refineries not having their own source of supply for crude oil by extending preference to such refineries in disposing of royalty oil under the Mineral Lands Leasing Act.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That section 36 of the Act of February 25, 1920 (41 Stat. 451, U.S.C., 1940 edition, title 30, sec. 192), is amended, in order to assist small business enterprise by encouraging the operation of oil refineries not having

an adequate supply of crude oil, by adding before the first proviso in the second paragraph thereof the following: "*Provided*, That inasmuch as the public interest will be served by the sale of royalty oil to refineries not having their own source of supply for crude oil, the Secretary of the Interior, when he determines that sufficient supplies of crude oil are not available in the open market to such refineries, is authorized and directed to grant preference to such refineries in the sale of oil under the provisions of this section, for processing or use in such refineries and not for resale in kind, and in so doing may sell to such refineries at private sale at not less than the market price any royalty oil accruing or reserved to the United States under leases issued pursuant to this Act, as amended: *Provided further*, That in selling such royalty oil the Secretary of the Interior may at his discretion prorate such oil among such refineries in the area in which the oil is produced:".

The Secretary's position on appeal is that the O'Mahoney Amendment can only be understood against the backdrop of the Mineral Lands Leasing Act of 1920, the act it amended. The Secretary's authority over royalty oil, it is argued, derives not from the O'Mahoney Amendment but from the act itself. Specifically, the Secretary relies on sections 32 and 36 of the act:[5] provisions which grant rulemaking power and authority to contract for sale of royalty oil. Absent a specific limitation on his discretion, the Secretary contends that these powers are broad enough to support the chal-

---

**2.** Despite the transfer of authority to the Secretary of Energy to promulgate regulations on the disposition of federal royalty interests, 42 U.S.C.A. § 7152(b)(5) (Supp.1978), the issues in this litigation are not moot. The Secretary of the Interior retains authority to administer the royalty oil program. 42 U.S.C.A. § 7153(a) (Supp. 1978). Pending promulgation of new regulations, the current ones remain in effect. 42 U.S.C.A. § 7295(a) (Supp.1978). Litigation pending on the effective date of the Department of Energy Organization Act is unaffected. 42 U.S.C.A. § 7295(c) (Supp.1978).

**3.** Act of July 13, 1946, Pub.L. No. 79–506, 60 Stat. 533. Senator O'Mahoney sponsored the amendment to section 36 of the Mineral Lands Leasing Act of 1920.

**4.** 30 U.S.C. §§ 181–263 (1976). The section of Title 30 containing the text of the O'Mahoney Amendment is § 192.

**5.** 30 U.S.C. §§ 189, 192 (1976). The portions of section 36 relied on antedated the O'Mahoney Amendment.

lenged regulation.[6] *See Arizona v. California*, 373 U.S. 546, 580, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963). While he concedes that the O'Mahoney Amendment directs him, in times of shortfall, to sell royalty oil to refineries not having their own source of crude oil, the Secretary contends that his discretion to allocate among those refineries is not limited. He claims that incorporation of the Small Business Administration's definition of "small business" enterprise is a rational means of exercising that discretion.

Plateau's position is that the O'Mahoney Amendment constitutes the specific limitation on the Secretary's discretion which the latter contends is lacking. Arguing that the amendment itself defines the class of refineries it is designed to benefit—namely, those without their own supply of crude oil—Plateau contends that the Secretary has no authority to impose his own, more restrictive, definition.

Both sides seek solace in the legislative history of the amendment and in the history of applicable administrative regulations. It will be helpful at this point to consider salient aspects of both histories.

The original bill as introduced by Senator O'Mahoney referred to "*smaller* refineries not having their own source of supply for oil" as the ones to be benefited. 91 Cong. Rec. 1761 (1945) (emphasis added). In explaining the purpose of the bill, the Senator identified "small refiners" as those "who do not own and operate their own producing leases." *Id.* at 1760. The word "smaller" was subsequently deleted by the Senate Committee on Public Lands and Surveys. S.Rep. No. 566, 79th Cong., 1st Sess. 1 (1945). The Secretary of the Interior, in expressing his views on the bill to the committee, had objected to the word "smaller" as being too indefinite. *Id.* at 2. The basic distinction drawn by the Secretary echoed

the one recognized by Senator O'Mahoney: the Secretary differentiated between "integrated companies" and refiners "not having their own source of supply for oil." *Id.* The latter description was that which emerged from the Senate Committee. *Id.* at 1. The House of Representatives adopted the same definition of refineries to be assisted, but added a reference to "small business enterprise" to the bill's preamble.[7] 92 Cong.Rec. 8160 (1946). The version of the bill ultimately enacted defined the targeted refineries as those "not having their own source of supply for crude oil."

This brief review of legislative history indicates, as the Secretary argues, that Congress intended to benefit small businesses. But the history also reveals that Congress went to some effort to define the class of beneficiaries. That class, as defined, consists of refineries without their own sources of crude oil.

The history of administrative regulation is also referred to by the parties. The relevant regulations have changed over time. They provide no persuasive pattern of consistent interpretation.

The first regulations dealing with refiner eligibility referred to no size limitations; the emphasis was on the same qualification mentioned in the O'Mahoney Amendment:

A refiner *unable to purchase in the open market an adequate supply of crude oil* to meet the needs of his existing refinery capacity may file an application with the Director of the Geological Survey, Washington, D. C. Such application shall be filed in triplicate and must be accompanied by a detailed statement containing the following information:

(a) The full name and address of the applicant; the location of his refinery or refineries; a complete disclosure of the applicant's affiliation or association with

---

6. The Secretary also relies on the general congressional directive that government agencies cooperate with the administrator of the Small Business Administration. *See* 15 U.S.C. §§ 631(a), 637(b)(4) (1976).

7. The report of the House Committee on Public Lands showed the reference to "small business

enterprise" as being in the operative language of the bill. H.R.Rep. No. 2340, 79 Cong., 2d Sess. 3 (1946). Its placement there was characterized as inadvertent; the committee amendment, adopted by the House, placed it only in the preamble. 92 Cong.Rec. 8160 (1946).

any other refiner of oil if such relationship exists . . . .

11 Fed.Reg. 10580 (1946) (emphasis added). The regulations reserved in the Secretary the right to make equitable allocations among competing, qualified refiners,[8] but they did not suggest that the Secretary would impose new qualifications on eligibility.[9]

It was not until 1960 that the Secretary decided to sell royalty oil only to qualified small businesses as identified by the Small Business Administration. Record, vol. 1, at 3. This decision was formalized in 1969 by the promulgation of the regulations in issue here. 34 Fed.Reg. 1019 (1969) (presently codified, as amended, 30 C.F.R. §§ 225.1–225.8 (1977)). Although the administrative practice since 1960 comports with the Secretary's present view of the O'Mahoney Amendment, the overall history is not consistent. The earliest administrative interpretation of the amendment supports Plateau's position. *Cf. Udall v. Tallman*, 380 U.S. 1, 4, 85 S.Ct. 792, 13 L.Ed.2d 615 (1965) (deference given to consistent administrative interpretation). In any event, even if the Secretary had followed a consistent pattern of administrative interpretation, to the extent such interpretation might have been inconsistent with the congressional mandate, it would have been unavailing. *See S. E. C. v. Sloan*, 436 U.S. 103, 117–18, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978).

As we view it, the legislative history of the O'Mahoney Amendment tends to underscore what seems apparent from the language ultimately enacted. We believe that language supports the conclusion reached by the trial court. Whether or not the preamble to the amendment is to be considered in construing its operative section, we think the choice of words by the Congress fairly reflects that it intended to benefit "small business enterprise" through the general device of allocating royalty oil to "refineries not having an adequate supply of crude oil." Act of July 13, 1946, Pub.L. No. 79–506, 60 Stat. 533. The operative section of the amendment not only authorizes but *directs* the Secretary to allocate crude oil supplies among "refineries not having their own source of supply for crude oil." *Id.* We therefore agree with the trial court that the amendment itself identifies the refineries it is intended to benefit. The challenged regulation goes beyond what Congress authorized.

We are not convinced by the Secretary's additional argument that the second proviso of the O'Mahoney Amendment gives the Secretary sufficient authority to adopt the Small Business Administration's definition. The proviso states:

That in selling such royalty oil the Secretary of the Interior *may at his discretion prorate* such oil among *such refineries* in the area in which the oil is produced.

Act of July 13, 1946, Pub.L. No. 79–506, 60 Stat. 533 (emphasis added). The Secretary finds in this language authority to discriminate, presumably by narrowing the statutory definition of eligible refiners. We do not give the word "prorate" such a strained meaning. We think the language means that if demand is greater than supply the Secretary may allocate supplies on a pro-

8. The authority of the Secretary to prorate oil, at his discretion, among qualified refiners in the area in which the oil is produced was conferred by the act. Act of July 13, 1946, Pub.L. No. 79–506, 60 Stat. 533. This authority was apparently granted to deal with the Secretary's concern that he might be faced with "the assertion of a preference by more than one refiner for the royalty oil in a particular field." H.R. Rep. No. 2340, 79th Cong., 2d Sess. 2 (1946).

9. The regulations provided in relevant part:
Where two or more bidders for the same royalty oil are properly entitled to a preference, the oil will be awarded to the bidder offering the highest price therefor in accordance with the specifications governing the sale. In case two or more identical bids are received for the same royalty oil from bidders properly entitled to a preference, the Secretary of the Interior reserves the right to prorate the oil among such bidders in such amounts as he deems equitable or, if it is not practicable to prorate the oil, to award it to one of such bidders by public drawing after notice to the bidders who submitted the identical bids.
11 Fed.Reg. 10581 (1946).

rated basis among "such refineries": refineries in the vicinity which lack adequate supplies of crude oil.[10]

The judgment of the trial court is affirmed.

---

10. *See* note 8 and accompanying text, *supra.*