734 F.2d 1402
 PUEBLO OF SANTA ANA, Plaintiff-Appellee,
v.
The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY,
Defendant-Appellant.
The Atchison, Topeka & Santa Fe Railway Company, Amicus Curiae
Pueblo De Acoma, Amicus Curiae
Public Service Company of New Mexico, Amicus Curiae.
 No. 83-1220.
 United States Court of Appeals,
Tenth Circuit.
 May 14, 1984.
 
 Scott E. Borg of Luebben & Hughes, Albuquerque, N.M., for plaintiff-appellee.
 Kathryn Marie Krause, Denver, Colo. (Stuart S. Gunckel, Denver, Colo., with her on the brief), for defendant-appellant.
 Gary Crosby, Santa Fe Industries, Inc., Chicago, Ill. and John R. Cooney, Lynn H. Slade, John S. Thal and Walter E. Stern, III of Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, N.M., filed briefs on behalf of amicus curiae The Atchison, Topeka & Santa Fe R. Co. Public Service Co. of New Mexico joined in the Amicus Briefs of The Atchison, Topeka & Santa Fe R. Co.
 Arturo G. Ortega of Ortega & Snead, P.A., Albuquerque, N.M., and Peter C. Chestnut, Albuquerque, N.M., filed a brief on behalf of amicus curiae Pueblo de Acoma.
 Before McWILLIAMS, BREITENSTEIN and LOGAN, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 This is an interlocutory appeal from the United States District Court for the District of New Mexico which we permitted to be filed. The court granted partial summary judgment to the plaintiff-appellee, Pueblo of Santa Ana, and against the defendant-appellant, Mountain States Telephone and Telegraph Company, Mountain Bell. The dispute involves a right of way for a telephone and telegraph line across Pueblo lands. The trial court held in favor of the Pueblo and Mountain Bell appeals. We affirm.
 
 
 2
 The Pueblo was the owner of a tract of land situated in New Mexico which was a part of the El Ranchito Grant. In November, 1927, the United States pursuant to the Pueblo Lands Act, 43 Stat. 636, filed an action in the federal district court for the district of New Mexico entitled United States as Guardian of the Pueblo of Santa Ana v. Brown, No. 1814 Equity (D.N.M.1928), seeking to quiet title to this tract in the Pueblo. Mountain Bell was party to that suit. During the course of that litigation, the Pueblo entered into a right-of-way agreement with Mountain Bell, dated February 23, 1928, granting an easement to construct, maintain, and operate a telephone and telegraph line, the same line that is in controversy here. Acting pursuant to Sec. 17 of the Pueblo Lands Act of June 7, 1924, 43 Stat. 636, 641-642, the Secretary of the Interior approved the agreement. The United States then moved to have Mountain Bell dismissed from the action on the ground that it had obtained title to the right of way through the easement agreement. In granting this motion, the court noted that it appeared "that since the institution of this suit said defendant has secured good and sufficient title to the right of way and premises in controversy...."
 
 
 3
 In the present action Mountain Bell argues that it obtained a valid right of way across the Pueblo's land in 1928 and under Sec. 17 of the Pueblo Lands Act of June 7, 1924, 43 Stat. 636. It argues further that the Pueblo's claims are barred by the 1928 dismissal of the case involving the same parties and issues. On these grounds, Mountain Bell moved for summary judgment that no trespass existed from 1928 to the present. The district court held, however, that Sec. 17 did not authorize conveyance of lands by the Pueblo with the approval of the Secretary. The district court accepted the Pueblo's argument that Sec. 17 was intended as a prohibition against the alienation of Pueblo lands except as Congress may provide in the future. Its requirements of Congressional authorization and Secretarial approval paralleled and were intended to extend to the Pueblo the Nonintercourse Act's requirement of a treaty or convention entered into pursuant to the Constitution. See Acts of June 30, 1834, 4 Stat. 729, 730 Sec. 12 (codified at 25 U.S.C. Sec. 177), and February 27, 1851, 9 Stat. 574, 587 Sec. 7. The court further held that the Pueblo's claims were not barred by the 1928 dismissal order because that order did not constitute a final judgment.
 
 
 4
 Section 17 of the Pueblo Lands Act provides:
 
 
 5
 "No right, title, or interest in or to the lands of the Pueblo Indians of New Mexico to which their title has not been extinguished as hereinbefore determined shall hereafter be acquired or initiated by virtue of the laws of the State of New Mexico, or in any other manner except as may hereafter be provided by Congress, and no sale, grant, lease of any character, or other conveyance of lands, or any title or claim thereto, made by any Pueblo as a community, or any Pueblo Indian living in a community of Pueblo Indians, in the State of New Mexico, shall be of any validity in law or in equity unless the same be first approved by the Secretary of the Interior." [Emphasis supplied.]
 
 
 6
 Mountain Bell challenges the argument of the Pueblo, upheld by the trial court, that Sec. 17 was intended as an extension to the Pueblos of the Nonintercourse Act, in prohibiting alienation of Pueblo lands except as Congress may provide in the future and as approved by the Secretary. Mountain Bell argues that the first clause of Sec. 17 requires Congressional approval for condemnations and other similar takings of Pueblo lands and that the second clause authorizes a Pueblo to alienate its lands if it obtains Secretarial approval. Analysis of these arguments requires an examination of the language, the historical background, the legislative history, and the administrative history of the Act.
 
 
 7
 The Nonintercourse Act required a treaty or convention to alienate Indian Lands, Act of June 30, 1834, 4 Stat. 729, 730 Sec. 12 (codified at 25 U.S.C. Sec. 177). The Act of February 27, 1851, 9 Stat. 574, 587 Sec. 7, extended all laws then in force regulating trade and intercourse with the Indian tribes to include Indian tribes in the Territory of New Mexico.
 
 
 8
 In State of New Mexico v. Aamodt, 10 Cir., 537 F.2d 1102, cert. denied 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572, a water rights case, we reviewed the historical background of the controversy, pp. 1105 and 1109, and pointed out, p. 1105, that the efforts of federal officials to protect the Pueblos' property were frustrated by the New Mexico territorial courts which held that the Pueblos were outside the protection of federal laws. This rationale was upheld by the Supreme Court in United States v. Joseph, 94 U.S. 614, 24 L.Ed. 295.
 
 
 9
 We noted, at p. 1105, that the 1910 New Mexico Enabling Act, 36 Stat. 557, 558-559, defined "Indian country" to include "all lands now owned or occupied by the Pueblo Indians" and stated that such lands are "under the absolute jurisdiction and control of the Congress of the United States." The constitutionality of this provision was upheld in United States v. Sandoval, 231 U.S. 28, 34 S.Ct. 1, 58 L.Ed. 107, which specifically overruled United States v. Joseph. The Court said, Id. at 39, 34 S.Ct. at 3, that,
 
 
 10
 "The people of the pueblos, although sedentary rather than nomadic in their inclinations, and disposed to peace and industry, are nevertheless Indians in race, customs, and domestic government."
 
 
 11
 The Court noted that the United States has treated the Pueblos "as requiring special consideration and protection, like other Indian communities." Id.
 
 
 12
 Because in the Joseph decision the Supreme Court decided that the Pueblo lands were not subject to the protective laws earlier passed by Congress, non-Indians were free to acquire Pueblo lands. The validity of titles so acquired became questionable when in Sandoval the Court held that the protective federal statutes did apply and presumably always had applied. Congress responded with the passage in 1924 of the Pueblo Lands Act, 43 Stat. 636. The Act established a "Pueblo Lands Board" to investigate the Pueblo lands and determine those cases in which the Indian title should be extinguished. The United States as guardian of the Pueblos was required to institute quiet title actions to settle adverse claims to Pueblo lands. Non-Indians claiming title could plead adverse possession and the statute of limitations, defenses not ordinarily available against the United States.
 
 
 13
 In 1926, the Court in United States v. Candelaria, 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023, reaffirmed Sandoval. In so doing, it said after referring to the 1834 and 1851 acts, p. 441, 46 S.Ct. p. 563:
 
 
 14
 "While there is no express reference in the provision to the Pueblo Indians, we think it must be taken as including them. They are plainly within its spirit and, in our opinion, fairly within its words, 'any tribe of Indians.' "
 
 
 15
 We echoed this language, noting the application of the Nonintercourse Act to the Pueblo Indians in Aamodt, supra. In Plains Elec. Gen. & Tr. Co-op. v. Pueblo of Laguna, 10 Cir., 542 F.2d 1375, 1376, we cited Candelaria as authority for the statement that "Lands of the Pueblos cannot be alienated without the consent of the United States." In United States v. University of New Mexico, 10 Cir., 731 F.2d 703, we noted that Congress extended the Nonintercourse Act to the Pueblos in 1851 and said that Sec. 17 of the Pueblo Lands Act of 1924 "reaffirmed that the Pueblos and their lands were fully under the guardianship of Congress and the protection of the Nonintercourse Act." At 706. In so doing we noted the following statement in United States v. Chavez, 290 U.S. 357, 362, 54 S.Ct. 217, 219, 78 L.Ed. 360:
 
 
 16
 "[T]he status of the Indians of the several Pueblos in New Mexico is that of dependent Indian tribes under the guardianship of the United States and that by reason of this status they and their lands are subject to the legislation of Congress enacted for the protection of tribal Indians and their property."
 
 
 17
 Thus we have three times held that the Pueblo's lands were under the protection of the Nonintercourse Act.
 
 
 18
 Mountain Bell argues that Sec. 17 was not a grant of power to the Pueblos to convey their lands, but instead reaffirmed the power of alienation which already existed in the Pueblos, and implemented the government's guardianship role by restricting that power. This view is insupportable. The House Report on the Pueblo Lands Act, reprinting the language of the Senate Report, states:
 
 
 19
 "It was only by the decision of the case of the United States v. Sandoval (213 U.S. 28 [34 S.Ct. 1, 58 L.Ed. 107] that the Supreme Court of the United States definitely established the principle that these Indians were wards of the Government....
 
 
 20
 Up to the time of the decision of the Sandoval case in 1913, it had been assumed by both the Territorial and State courts of New Mexico, that the Pueblos has [sic] the right to alienate their property. From earliest times also the Pueblos had invited Spaniards and other non-Indians to dwell with them, and in many cases Pueblos and individual Indians attempted to convey lands to non-Indians which under the decision of the Sandoval case they were not competent to do." H.R.Rep. No. 787, 68th Cong. 1st Sess. 2 (1924).
 
 
 21
 It seems clear, then, that if Sec. 17 is not a delegation of power, the 1928 agreement is void.
 
 
 22
 The terms of Sec. 17 do not provide such authorization to the Pueblos to grant their lands. The two clauses of Sec. 17 of the Pueblo Lands Act are joined by the conjunctive "and." To us that means exactly what it says. No alienation of the Pueblo lands shall be made "except as may hereafter be provided by Congress" and no such conveyance "shall be of any validity in law or in equity unless the same be first approved by the Secretary of the Interior." Two things are required. First, the lands must be conveyed in a manner provided by Congress. Second, the Secretary of the Interior must approve. As to the first, at the time of the agreement between the Pueblo and Mountain Bell, Congress had provided nothing. Hence, the first condition was not met. The fact that Congress had provided no method makes the approval of the Secretary meaningless. The operation of the second clause depends on compliance with the first clause.
 
 
 23
 Mountain Bell argues that to give the first clause the meaning which we have approved runs contrary to 25 U.S.C. Secs. 311-322 providing among other things for rights of way for telephone and telegraph lines. The answer is that Congress did not extend the application of these statutes to the Pueblo Indians of New Mexico until the Act of April 21, 1928, see 25 U.S.C. Sec. 322, which was after the Secretary had given his approval to the agreement with Mountain Bell. The Secretary's approval, given on April 13, 1928 says that it was done pursuant to the provisions of Sec. 17 of the Act of June 7, 1924.
 
 
 24
 Mountain Bell makes much of the legislative history of the Pueblo Lands Act. We have examined the Senate and House reports of the hearings. Hearings before a subcommittee of the Committee on Public Lands and Surveys, on S. 3865 and 4223, 67th Cong. 4th Session; Hearings before the Committee on Indian Affairs on H.R. 13452 and H.R. 13674, 67th Cong. 4th Session. We find that the most that can be said about them is that they are ambiguous and add nothing to the express language of the statute. If it be conceded that the statute is ambiguous, and we do not feel that it is, then as said in Bryan v. Itasca County, 426 U.S. 373, 392, 96 S.Ct. 2102, 2112, 48 L.Ed.2d 710:
 
 
 25
 "... we must be guided by that 'eminently sound and vital canon,' Northern Cheyenne Tribe v. Hollowbreast, 425 U.S. 649, 655 n. 7 [96 S.Ct. 1793, 1797 n. 7, 48 L.Ed.2d 274] (1976), that 'statutes passed for the benefit of dependent Indian tribes ... are to be liberally construed, doubtful expressions being resolved in favor of the Indians.' "
 
 
 26
 See also United States v. Santa Fe Pacific Railroad Co., 314 U.S. 339, 354, 62 S.Ct. 248, 255, 86 L.Ed. 260.
 
 
 27
 Mountain Bell says that the administrative construction of the statute supports its contentions. Although the construction put on a statute by the agency charged with administering it is entitled to deference, the courts are the final authorities on statutory construction and are not obliged to accept an administrative construction which they deem inconsistent with a statutory mandate or frustrates congressional policy. SEC v. Sloan, 436 U.S. 103, 117-118, 98 S.Ct. 1702, 1711, 56 L.Ed.2d 148; and FMC v. Seatrain Lines, Inc., 411 U.S. 726, 745-746, 93 S.Ct. 1773, 1784-1785, 36 L.Ed.2d 620. See also Plateau, Inc. v. Dept. of Interior, 10 Cir., 603 F.2d 161, 164. In our opinion, the administrative actions on which Mountain Bell relies violate the plain congressional intent of Sec. 17 of the Pueblo Lands Act.
 
 
 28
 Mountain Bell argues that the Pueblo's claim is barred by the doctrines of res judicata and collateral estoppel because of the dismissal of Mountain Bell as a defendant in United States v. Brown, supra, No. 1814 Equity (D.N.M.1928). The Brown suit was filed in November of 1927, under the Pueblo Lands Act of June 7, 1924. Mountain Bell neither entered an appearance in the case nor filed an answer. On April 13, 1928, the Assistant Secretary of the Interior approved an agreement between the Pueblo and Mountain Bell for a telephone lines easement across the Pueblo lands. The approval reads "APPROVED, pursuant to the provisions of Section 17 of the Act of June 7, 1924 (43 Stat.L. 636)."
 
 
 29
 The United States then filed a motion in the Brown case asking the dismissal of Mountain Bell and, as ground for the motion it alleged that,
 
 
 30
 "subsequent to the institution of this suit said defendant has obtained a deed from the Pueblo of Santa Ana approved April 13, 1928, by the Secretary of the Interior in accordance with Section 17 of the Pueblo Lands Act of June 7, 1924, and that thereby said defendant has obtained, for an adequate consideration, good and sufficient title to the right of way in controversy herein between plaintiff and said defendant."
 
 
 31
 In its order granting the motion the trial court echoed the language of the motion. It failed to state whether it was with or without prejudice and it was, therefore without prejudice. See Ex Parte Skinner and Eddy Corp., 265 U.S. 86, 44 S.Ct. 446, 68 L.Ed. 912. Home Owners' Loan Corp. v. Huffman, 8 Cir., 134 F.2d 314, 317, says that Rule 41 Fed.R.Civ.P., which adopted this standard, followed long established practice in federal courts and is intended to clarify and make definite that practice.
 
 
 32
 Mountain Bell argues that the three requirements for application of res judicata or collateral estoppel are (1) identity of causes of action, (2) identity of the parties or privity, and (3) a final judgment in the first suit. Only the third need be considered. Mountain Bell says that a voluntary dismissal may be a final judgment for res judicata purposes if it addresses and resolves the issue originally in dispute. In making this argument, Mountain Bell relies largely on cases wherein a consent decree was issued. A consent judgment may assume any of several forms. When entered as a decree of dismissal with prejudice, the judgment is generally preclusive. See Bradford v. Bronner, 5 Cir., 665 F.2d 680, 682 and Bloomer Shippers Ass'n v. Illinois Central Gulf Railroad Co., 7 Cir., 655 F.2d 772, 777.
 
 
 33
 The dismissal order in Brown indicates neither the court's consideration nor approval of the agreement. The court said only that it appeared to the court that the defendant had secured good and sufficient title by a deed from the Pueblo approved by the Secretary of the Interior "in accordance with the provisions of Section 17 of the Pueblo Lands Act of June 7, 1924." There is no showing that the court was given a copy of the agreement. There were no findings of fact or conclusions of law.
 
 
 34
 In National Life & Accident Insurance Co. v. Parkinson, 10 Cir., 136 F.2d 506, 509, we said:
 
 
 35
 "Courts do not validate that which is invalid by merely consenting to a dismissal of the controversy over which its jurisdiction has been invoked."
 
 
 36
 We have held that the agreement is invalid under Sec. 17 in the absence of congressional action. Mountain Bell would have us hold that the agreement was valid under the action of the district court in dismissing the case without prejudice and making no effort to decide the validity of the agreement. We reject the arguments of res judicata and collateral estoppel.
 
 
 37
 Pursuant to Rule 56, Fed.R.Civ.P., Mountain Bell moved for a partial summary judgment dismissing the plaintiff's claims for trespass for the period 1928 to date alleging that it is not a trespasser by reason of the April 13, 1928, approval of the Secretary of the Interior. The trial court denied the motion saying, I R. p. 143:
 
 
 38
 "The Pueblo shall recover damages from April 13, 1928 to the date the defendant's telephone and telegraph line was removed. Plaintiff's prayer for punitive damages is denied."
 
 
 39
 As the Pueblo points out, the commentators generally agree that where there is no genuine issue of fact, the court may enter summary judgment for either party, whether or not such party has made a motion therefor. See 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d Sec. 2720, at 29-30, "the weight of authority is that summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56."
 
 
 40
 Mountain Bell's motion does not address the claimed trespass prior to 1928, and hence the plaintiff's claim for damages for the period prior to 1928 remains at issue.
 
 
 41
 Affirmed.