Marshal J. ROUSE; Stephen F. Husher; Cherie R. Kraft; Barbara Jacobson; and Neftali Marcial, Plaintiffs,

v.

The CITY OF AURORA, an Incorporated Municipality; Z.J. Gifts D–2, L.L.C., doing business as Christie's Toy Box, an Oklahoma Limited Partnership; Michael D. Christner; Ross Jackson, and Dan Weingarten, Individually and doing business as D.J. Associates, a New Jersey sole proprietorship, Defendants.

Civ. A. No. 94–B–1523.

United States District Court, D. Colorado.

Oct. 6, 1995.

**1534**

Michael J. Norton, Friedlob Sanderson Raskin Paulson & Tourtillott, P.C., Denver, CO, for plaintiffs.

Charles W. Hemphill, Littleton, CO, Arthur M. Schwartz, Michael W. Gross, Arthur M. Schwartz, P.C., Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant, City of Aurora (City), moves for partial summary judgment pursuant to Fed.R.Civ.P. 56 on claims one, two, three, four, six, and seven of plaintiffs' Marsha J. Rouse (Rouse), Stephen F. Husher (Husher), Cherie R. Kraft (Kraft), Barbara Jacobson (Jacobson), and Neftali Marcial (Marcial) (collectively, plaintiffs) complaint. Defendants' Z.J. Gifts D-2, L.L.C. (Z.J. Gifts), Michael Christner (Christner), Ross Jackson (Jackson), Dan Weingarten (Weingarten), and D.J. Associates' (D.J.) (collectively, private defendants) move for summary judgment on all seven of plaintiffs' claims. The issues are adequately briefed and orally argued. As a matter of law, on the undisputed facts, plaintiffs' claims lack cognizable constitutional foundation. Therefore, I will grant the motions for summary judgment on claims one through seven and dismiss as moot, dependent relief claims eight and nine.

I.

Unless otherwise indicated, the following material facts are undisputed. Z.J. Gifts, an Oklahoma limited partnership, opened a store under the trade name Christie's Toy Box (Christie's) in the Granada Park Shopping Center in Aurora, Colorado. The store sells lingerie, gift and novelty items, books, magazines, and videotapes, at least some of which are sexually explicit. (Complaint ¶ 18; Answer ¶ 8). Defendants, Christner and Jackson, are Christie's managers. (Answer ¶ 9). According to plaintiffs, defendant Weingarten, individually and doing business as D.J. Associates, a New Jersey proprietorship, owns and/or manages the Granada Park Shopping Center. D.J. Associates admits that it manages the shopping center and that it leased space in the shopping center to Christie's. (Weingarten and D.J. Assoc.Answer ¶¶ 8-10).

Concerned with what they allege is a nexus between sexually oriented businesses such as Christie's and a number of social evils, plaintiffs and others formed an unincorporated association known as "Citizens for a Porn Free Aurora." (association) (Complaint ¶ 23). In December, 1993, plaintiffs began demonstrating on the shopping center sidewalk near Christie's. (Complaint ¶ 20). The sidewalk abutting Christie's is privately owned as part of the shopping center. When the demonstrations began, the association obtained written permission from seven owner/operators of businesses in the shopping center. The "permission slips" purported to allow picketing, distribution of literature, and other expressive activities in the common areas of the shopping center. (Complaint Exh. A). In addition to distributing literature, some members of the association distributed cookies and candies to individuals leaving Christie's. Hence, this group became known as the "cookie patrol." (Complaint ¶ 28).

From December, 1993 to May, 1994 the cookie patrol passed out informational leaflets and cookies on many occasions to Christie's patrons on the shopping center sidewalk in front of Christie's. Also on several occasions before May 6, 1994 the police were called to Christie's in response to complaints about the cookie patrol. Until May 6, 1994,

however, the police had not taken any further action. (Complaint ¶ 29–30). On May 6, 1994, plaintiffs, with the exception of Marcial who arrived later and Rouse, were on the shopping center sidewalk in front of Christie's distributing leaflets and cookies to patrons as they left Christie's. (Complaint ¶ 32). At about 8:00 p.m., Defendant Christner called the Aurora Police to complain that the demonstrators were harassing customers and obstructing access to Christie's. (Christner Answer ¶ 19). The Aurora Police arrived at the shopping center and contacted Christner and Jackson at Christie's. There is no genuine dispute that, in the presence of the police, Christner asked the plaintiffs to leave the area. After plaintiffs refused to leave, the police issued them Aurora municipal code criminal trespass citations to appear in municipal court. (Complaint ¶ 40; Sauerwein Aff. ¶ 9). Plaintiffs filed this action complaining of violations of their federal and state constitutional rights of free speech and assembly, equal protection, and due process.

## II.

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992).

Once the moving party demonstrates an absence of evidence supporting an essential element of the plaintiff's claim, the burden shifts to the plaintiff to show that there is a genuine issue for trial. *Celotex,* 477 U.S. at

324, 106 S.Ct. at 2553. To satisfy this burden the nonmovant must point to specific facts in an affidavit, deposition, answers to interrogatories, admissions, or other similar admissible evidence demonstrating the need for a trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Mares,* 971 F.2d at 494.

Summary judgment is also appropriate where no reasonable jury could return a verdict for the claimant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *Mares,* 971 F.2d at 494. However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Mares,* 971 F.2d at 494.

## III.

Plaintiffs' complaint alleges: claim one) a violation of the United States Constitution First Amendment right of freedom of speech and assembly under 42 U.S.C. § 1983; claim two) a denial of equal protection of the law under 42 U.S.C. § 1983; claim three) a denial of due process of law under 42 U.S.C. § 1983; claim four) an unlawful prior restraint on speech under 42 U.S.C. § 1983; claim five) false arrest under 42 U.S.C. § 1983; claim six) a conspiracy under 42 U.S.C. § 1985; and claim seven) a pendant state claim for violation of Colorado Constitution Article II, Section 10. In their dependent claims eight and nine, plaintiffs seek preliminary and permanent injunctive and declaratory relief pursuant to 28 U.S.C. § 2201 and 2202. Plaintiffs also seek actual, compensatory, and punitive damages.

### A.

Plaintiffs first allege that on May 6, 1994, defendants deprived them of their constitutional rights to free speech. The linchpin to this claim and, indeed, to plaintiffs'

case theory underlying all claims in this action, is their allegation that the Granada Park Shopping Center is a public forum. I conclude that there is no genuine issue of material fact remaining on this central issue and, thus, absent this necessary predicate, plaintiffs' claims fall beginning with their first claim.

The rights guaranteed by "the First and Fourteenth Amendments are limitations on state action, not on action by the owner of private property used only for private purposes." *Central Hardware Co. v. NLRB*, 407 U.S. 539, 547, 92 S.Ct. 2238, 2243, 33 L.Ed.2d 122 (1972). No "protection or redress" against a private corporation or person who seeks to abridge the free expression of others is provided by the United States Constitution. *Hudgens v. NLRB*, 424 U.S. 507, 513, 96 S.Ct. 1029, 1033, 47 L.Ed.2d 196 (1976). "Before an owner of private property can be subjected to the commands of the First and Fourteenth Amendments the privately owned property must assume to some significant degree the functional attributes of public property devoted to public use." *Central Hardware Co. v. NLRB*, 407 U.S. 539, 547, 92 S.Ct. 2238, 2243, 33 L.Ed.2d 122 (1972). Thus, under some circumstances, privately owned property may, for First Amendment purposes, be treated as though it were publicly held. *Marsh v. State of Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

*Marsh* involved a "company town" which was wholly owned by a corporation, yet had all of the characteristics of any other American town. *Marsh*, 326 U.S. at 545, 66 S.Ct. at 294. The corporation provided municipal services such as sewer service and police protection to the town residents. *Id.* A Jehovah's Witness attempted to distribute religious pamphlets on a sidewalk on the "business block" of the town. She was arrested and convicted of trespassing. The Supreme Court reversed, holding that a corporation could not assume the functions of a municipal government and at the same time deny First Amendment rights. *Id.* at 546–57, 66 S.Ct. at 294–95. In *Amalgamated Food Emp. Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 315, 88 S.Ct. 1601, 1606, 20 L.Ed.2d 603 (1968), the Supreme Court applied the *Marsh* reasoning to a shopping center complex. The *Logan Valley* Court reasoned:

> because the shopping center serves as the community business block 'and is freely accessible and open to the people in the area and those passing through,' *Marsh v. State of Alabama*, 326 U.S., at 508 [66 S.Ct., at 279], the State may not delegate the power, through the use of its trespass laws, wholly to exclude those members of the public wishing to exercise their First Amendment rights on the premises in a manner and for a purpose generally consonant with the use to which the property is actually put.

*Logan Valley*, 391 U.S. at 319–20, 88 S.Ct. at 1608–09.

The Court reasoned that the Logan Valley Mall was the functional equivalent of the "community business block" of the company town in *Marsh*. It then offered protection to speech in a nominally private place. *Logan Valley*, 391 U.S. at 319–20, 88 S.Ct. at 1608–09.

Four years later the Court revisited *Logan Valley* in *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). In *Lloyd*, a group of people inside a large, enclosed shopping mall were distributing handbills protesting the military draft and the Vietnam war. The shopping center had adopted a strict policy against the distribution of handbills in the mall and made no exceptions to this rule. *Id.* at 555, 92 S.Ct. at 2222. *Lloyd* presented the question whether under the federal constitution a privately owned shopping center may prohibit distribution of handbills on its property when the activity is unrelated to the shopping center's operations. *Id.* at 552, 92 S.Ct. at 2220. The *Lloyd* court devoted a substantial portion of its opinion to distinguishing its facts from *Logan Valley*. Without expressly overruling *Logan Valley*, the *Lloyd* court held that property does not "lose its private character merely because the public is generally invited to use it for designated purposes." *Id.* at 569, 92 S.Ct. at 2229. Moreover, "[t]he essentially private character of a store and its privately owned abutting property does

not change by virtue of being large or clustered with other stores in a modern shopping center." *Id.* The Supreme Court then said in a case decided the same day that, if being "open to the public" were enough to meet the private vs. public test, "[s]uch an argument could be made with respect to almost every retail and service establishment in the country, regardless of size or location." *Central Hardware Co. v. NLRB,* 407 U.S. 539, 547, 92 S.Ct. 2238, 2243, 33 L.Ed.2d 122 (1972) (distinguishes rights grounded in National Labor Relations Act from those flowing from Constitution).

Despite the language in *Lloyd* and *Central Hardware,* plaintiffs argue that the facts in this case support application of *Logan Valley* rather than *Lloyd* and its progeny. I disagree. Although the Supreme Court did not explicitly overrule *Logan Valley* in *Lloyd,* any doubt about the viability of the *Logan Valley* holding was eliminated in *Hudgens v. NLRB,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976) when the Court stated, "the rationale of *Logan Valley* did not survive the Court's decision in the *Lloyd* case." *Hudgens,* 424 U.S. at 518, 96 S.Ct. at 1035. In *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (concurring opinion), the First Amendment holding of *Food Employees v. Logan Valley Plaza,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968) was described as "overruled in *Hudgens v. NLRB.*" *Sears,* 436 U.S. at 211, 98 S.Ct. at 1764. More recently, in *Lechmere, Inc. v. NLRB,* 502 U.S. 527, 534, 112 S.Ct. 841, 846, 117 L.Ed.2d 79 (1992), the Court stated that "in *Hudgens* we made it clear that *Logan Valley* was overruled." *Lechmere,* 502 U.S. at 534, 112 S.Ct. at 846. Thus, *Lloyd* and its progeny provide the framework for my analysis in determining whether plaintiffs had a First Amendment right to engage in expressive conduct directed at Christie's on the shopping center's common sidewalk outside of Christie's.

First, I determine whether, in a First Amendment sense, the Granada Park Shopping Center is private property or whether it is more in the nature of public property. I conclude as a matter of law on the undisputed material facts, that the sidewalk abutting the Granada Park Shopping Center is private property to which no First Amendment rights inure.

In *Lloyd,* the Court held that property does not "lose its private character merely because the public is generally invited to use it for designated purposes." *Lloyd,* 407 U.S. at 569, 92 S.Ct. at 2229. "The essentially private character of a store and its privately owned abutting property does not change by virtue of being large or clustered with other stores in a modern shopping center." *Id.* Thus, when a shopping center owner opens his private property to the public for the purpose of shopping, the First Amendment to the United States Constitution does not create individual rights in expression beyond those already existing under applicable law. *Id.*

The parties do not dispute that the shopping center is an open, "strip" shopping center rather than a large, enclosed shopping mall. Christie's is one of several businesses located in a row of attached buildings. There is a concrete sidewalk abutting the row of the businesses and separating the row from the privately owned parking lot which serves all of the businesses in the shopping center. The common parking lot is bordered on its far perimeter by a public sidewalk. The privately owned shopping center with its abutting sidewalk and parking lot is located at the intersection of Chambers Road and Mississippi Avenue, two major streets in Aurora, Colorado. Unlike large, enclosed shopping malls, this shopping center has no anchor department stores, no movie theatres, no corridors, no municipal facilities, no constant public law enforcement presence, and the businesses do not share common hours of operation. Under the Supreme Court's First Amendment jurisprudence, the Granada Park Shopping Center is private property. Consequently, the First Amendment does not apply to shelter plaintiffs' activities there. Therefore, I will grant defendants' motion for summary judgment on plaintiffs' claim one alleging violation of their right of freedom of speech and assembly.

### B.

### 1.

Plaintiffs' claims two, three, four, and six are also predicated on the allegation that plaintiffs' expressive acts occurred "in a public forum." (Complaint ¶¶ 25, 32, 58, 62, 65, 71). It follows from my analysis above that plaintiffs have no viable First and Fourteenth Amendment rights upon which to base these claims. Consequently, I will grant defendants' motion for summary judgment on plaintiffs' claims two, three, four, and six insofar as these claims are grounded in the First and Fourteenth Amendments.

### 2.

In claim two, plaintiffs further allege that defendants deprived them of equal protection of the law in violation of 42 U.S.C. § 1983. Equal protection of the law means that governmental action which disadvantages a suspect class or impinges a fundamental right is subject to strict scrutiny. *See City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Harris v. Champion,* 15 F.3d 1538, 1567 (10th Cir.1994).

Here, plaintiffs neither allege the existence of a class, much less a suspect class, nor identify any evidence of the existence of a class or suspect class. Moreover, to the extent plaintiffs' equal protection claim is based on an alleged impingement of fundamental First Amendment rights, I ruled in part III A that the common areas of the shopping center are private property to which no First Amendment rights inure. Accordingly, I will grant defendants' motion for summary judgment on claim two for violation of 42 U.S.C. § 1983 based on violation of equal protection of the law.

### 3.

In claim three, plaintiffs further allege a § 1983 violation of due process of law as guaranteed by the United States Constitution. Plaintiffs claim the alleged deprivation is one of procedural and substantive due process. As to procedural due process, plaintiffs fail to allege what process or procedure was due them that they did not receive. This omission is fatal to their procedural due process claim.

As to substantive due process, that claim is grounded in the First Amendment. Again, however, the constitutional foundation for this claim is lacking here. Consequently, under either theory, summary judgment lies as to claim three.

### 4.

█ Plaintiffs advance the novel proposition that written permission from some of the shopping center tenants to pass out leaflets on the shopping center's common areas gives rise to First Amendment protection. The parties also spend considerable time discussing the effect of tenant lease provisions. However, nothing in the leases evidence that the shopping center is a public forum. It is undisputed that in December, 1993 several tenants gave written permission to the "Citizens for a Porn Free Aurora" to "use the common areas" to "conduct [their] expressive activities at any place in the Granada Park Shopping Center...." (Pltf.Exh. D). It is not surprising that the owners/operators of Christie's did not join in this permission. It should also come as no surprise, however, and plaintiffs' counsel seemed to concede at oral argument, that constitutional rights flow from the Constitution, not from private contract or written permission given by private parties. Accordingly, I find and conclude that the permission letters obtained by the protestors from some of the shopping center tenants and the leases are irrelevant.

### 5.

In addition to joining the other defendants in their motion for summary judgment on claims one, two, three, four, and six, the private defendants move for summary judgment on plaintiffs' claim five. Plaintiffs claim that the private defendants are liable to them under 42 U.S.C. § 1983 as "joint actors" with the City, arguing that their citation of plaintiffs for criminal trespass constituted false arrest. Plaintiffs concede no Fourth Amendment deprivation is alleged. Again, the motion for summary judgment is well taken.

Plaintiffs' allege that the private defendants acted in concert with the City to "deprive the [p]laintiffs of their clearly established and well-known fundamental Constitu-

tional rights, including free speech and assembly, equal protection of the laws, and due process of the laws." (Complaint ¶ 43). To the extent this claim is based on First Amendment rights, I will grant defendant's summary judgment motion consistent with my ruling in part III A.

Still underlying claim five are plaintiffs' allegations under § 1983 of violations of their rights to equal protection and due process of the law and their § 1983 claim for false arrest. 42 U.S.C. § 1983 applies to persons who deprive others of a right under the United States Constitution or the laws of the United States and who act under color of state law. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

My analysis of claim five is made difficult by plaintiffs' failure to specify in this claim the precise parameters of the constitutional right(s) of plaintiffs that private defendants are alleged to have violated. I will assume, however, that, consistent with claims two and three, plaintiffs base their § 1983 false arrest claim upon violations of their rights to equal protection and due process of law.

As with claims two and three, claim five lacks a constitutional foundation. Consequently, I will grant private defendants' motion for summary judgment on that claim.

■ The City did not move for summary judgment on claim five. However, I will *sua sponte* grant summary judgment in favor of the City and against plaintiffs on claim five. Here, plaintiffs responded fully to private defendants' motion for summary judgment on claim five. Thus, plaintiffs had sufficient notice and adequate opportunity to demonstrate why summary judgment should not be granted. I find and conclude that without the requisite constitutional foundation, plaintiffs have no basis to maintain this claim, not only against the private defendants, but the City as well. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Dickeson v. Quarberg,* 844 F.2d 1435, 1444 n. 8 (10th Cir.1988); *Pueblo of Santa Ana v. Mountain States Tel. and Tel. Co.,* 734 F.2d 1402, 1408 (10th Cir. 1984), *reversed on other grounds,* 472 U.S. 237, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985);

Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d § 2720.* This determination is consistent with the objective of Fed. R.Civ.P. 56 to expedite the disposition of cases and, collaterally, with the mandate of Rule 54(c)'s requirement that the court grant the relief to which a party is entitled "even if the party has not demanded such relief in his pleadings."

### 6.

Plaintiffs allege that defendants and other unnamed persons conspired to deprive them of their First Amendment rights, and rights to equal protection and due process under the United States Constitution.

A person injured by conspiracies formed "for the purpose of depriving, either directly or indirectly, any person ... of the equal protection of the laws has a cause of action pursuant to 42 U.S.C. § 1985(3)." *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). A plaintiff in a § 1985(3) action must allege and prove four elements:

1. a conspiracy;

2. for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ...; and

3. an act in furtherance of the conspiracy;

4. whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Local 610,* 463 U.S. at 828–29, 103 S.Ct. at 3355–56. The second element of this claim is lacking as a matter of law.

As with plaintiffs' other claims, the conspiracy claim fails for lack of requisite constitutional basis. Moreover, there is no showing of the existence of a protected class. Accordingly, I will grant defendants' motion for summary judgment on claim six.

### 7.

■ Plaintiffs claim that their rights under the Colorado Constitution were also violated by the actions of defendants. Again, I disagree.

Individual states have the "sovereign right to adopt in [their] own Constitution individual liberties more expansive than those conferred by the Federal Constitution." *Prune-Yard Shopping Center v. Robins*, 447 U.S. 74, 80, 100 S.Ct. 2035, 2039, 64 L.Ed.2d 741 (1980); *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967). Thus, I look to Colorado law to determine if the Colorado Constitution grants expressive rights beyond those found in the United States Constitution.

The Colorado Supreme Court decided in *Bock v. Westminster Mall Co.*, 819 P.2d 55 (Colo.1991) that "within the public spaces of the [Westminster] Mall, Article II, Section 10 protects [citizens'] rights to distribute ... pamphlets and to solicit signatures pledging non-violent dissent from the federal government's foreign policy toward Central America." *Id.* at 56. In reaching this conclusion, the Court examined in great detail federal free speech jurisprudence. The Court concluded that it was "unpersuaded by the ... various reasonings in the [United States Supreme Court's] line of cases." *Id.* at 58. Rather, in Colorado, "[t]he First Amendment is a floor, guaranteeing a high minimum of free speech, while ... Article II, Section 10 is the 'applicable law' under which the freedom of speech in Colorado is further guaranteed." *Id.* at 59 *quoting PruneYard*, 447 U.S. at 81, 100 S.Ct. at 2040. This is consistent with "Colorado's tradition of ensuring a broader liberty of speech.... For more than a century, [the Colorado Supreme] Court has held that Article II, Section 10 provides greater protection of free speech than does the First Amendment." *Bock*, 819 P.2d at 59. (citations omitted). A majority of the *Bock* court determined that:

> [w]here governmental entities or public monies are shown by the facts to subsidize, approve of, or encourage private interests and such private interests happen also to restrict the liberty to speak and dissent, this court may find that such private restrictions run afoul of the protective scope of Article II, Section 10.

*Id.* at 60. The *Bock* majority then engaged in a fact intensive analysis of the circumstances of the Westminster Mall's operation and concluded that there was "governmental involvement" sufficient to render that mall a "public place." *Id.*

The Westminster Mall is a large regional shopping center which serves not only Westminster but "numerous Denver suburbs" including Boulder. The mall has five anchor stores, some 130 other tenants, and a movie theatre. The mall covers about 118 acres and includes parking for more than 6,500 cars. The mall is enclosed and has corridors and concourses which include fountains, foliage, and seating. Generally, the stores in the mall are open for business between 10:00 a.m. and 9:00 p.m., six days a week. The Court found it significant that the City of Westminster operates a rent-free police station in the mall. The presence of the police substation in the mall "conveys the impression that the City participates, either symbolically or actually, in ... restrictions of speech by the mall operators." *Bock*, at 61. The *Bock* court also noted the "highly visible governmental presence in the [m]all of Army, Navy, and Marine Corps recruiting offices, and voter registration drives." *Bock*, 819 P.2d at 62. In finding that the Colorado Constitution extends free speech protection to the protesters, the Colorado Supreme Court concluded that the mall "functions as the equivalent of a downtown business district." *Bock*, at 61; *see also* (Def.Exh. A).

In stark contrast, it is undisputed that the Granada Park Shopping Center consists of less than 25 small businesses, has no department stores, has parking for less than 400 cars, has no police substation, no military offices, and no movie theatres. Nor do the businesses there share common hours of operation. Plaintiffs present no evidence of the type of governmental involvement at Granada Park which the Court found compelling in *Bock*. Therefore, I conclude in light of *Bock*, 819 P.2d 55 (Colo.1991) and the undisputed facts here, that, as a matter of law, the Granada Park Shopping Center is neither a public place nor the functional equivalent of a downtown business district. Thus, plaintiffs' activities are not protected expressions under Article II, Section 10 of the Colorado Constitution. Accordingly, I will grant defendants'

motion for summary judgment on plaintiffs' claim seven.

### 8.

Claims eight and nine are plaintiffs' dependent claims for remedies they seek under claims one through seven.  However, as summary judgment will enter in favor of defendants on claims one through seven, plaintiffs are entitled to no relief or remedy.  Therefore, I will dismiss claims eight and nine.